Filed 5/31/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B238361, B240572 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA075027) |
| v. | |
| KAREN A. CHRISTIANSEN, | |
| Defendant and Appellant. | |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County. Stephen A. Marcus, Judge. Reversed with directions.

———

Hillel Chodos, Philip Kaufler, and Michael A. Goldfeder for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels, and Eric E. Reynolds, Deputy Attorneys General, for Plaintiff and Respondent.

———

Karen Christiansen was charged with four counts of conflict of interest in violation of Government Code section 1090,[1] which generally prohibits public officials from being financially interested in contracts they make in their official capacity. A jury convicted Christiansen on all counts, and the trial court sentenced her to 4 years 4 months in prison and ordered her to pay restitution of approximately $3.5 million.

On appeal, Christiansen argues on numerous grounds that her convictions must be reversed. We agree. Because Christiansen was not a member, officer, or employee of the relevant public body, section 1090 does not apply to her. We therefore reverse her convictions, vacate her sentence and the restitution award, and direct the superior court to dismiss all charges against her.

## BACKGROUND

Section 1090 provides as follows: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." Violation of section 1090 is a crime punishable by a fine of not more than $1,000 or by imprisonment in state prison, and violators are "forever disqualified from holding any office in this state." (§ 1097.)

The amended information charged Christiansen with four counts of conflict of interest in violation of section 1090 (counts 3 through 6; the first two counts of the amended information alleged crimes by a different defendant). It further alleged as to count 6 that Christiansen intentionally took, damaged, and destroyed property worth more than $1.3 million within the meaning of Penal Code section 12022.6, subdivision (a)(3).

Christiansen pleaded not guilty. The charges were tried to a jury, which found Christiansen guilty on all counts and found the special allegation true.

---

[1] Statutory references are to the Government Code unless otherwise indicated.

2

The trial court sentenced Christiansen to 4 years 4 months in prison, calculated as follows: the low term of 16 months as to count 6, plus 36 months pursuant to Penal Code section 12022.6, subdivision (a)(3). The court also imposed concurrent sentences of the mid-term of 2 years on each of counts 3, 4, and 5. In addition, the court ordered restitution to the Beverly Hills Unified School District (the District) in the amount of $3,539,991. The court further imposed various statutory fines and fees and credited Christiansen with 62 days of presentence custody (31 days actual time, 31 days good time/work time).

The evidence introduced at trial showed the following facts: In February 2005, Christiansen entered into a written contract with the District (the 2005 contract). The 2005 contract stated that in 2004 Christiansen became an employee of the District, with the title "Director of Planning and Facilities." The 2005 contract provided that she would remain employed in that position through June 2007, and it spelled out the terms and conditions of that continuing employment.

In June 2006, Christiansen and the District entered into a new contract (the 2006 contract). The 2006 contract acknowledged that the District had employed Christiansen as the Director of Planning and Facilities "continuously since August, 2004," that "[d]uring this period of time the relationship between [t]he District and Karen Christiansen has been one of employer-employee," that Christiansen had not been an independent contractor, and that she had been "required[] to devote 100% of her professional time to fulfill her duties as Director of Planning and Facilities." The 2006 contract went on to provide that "[t]he District and Karen Christiansen have mutually decided that it is in the best interest of both that the employer-employee relationship between [t]he District and Karen Christiansen be terminated as of May 31, 2006, and that Karen Christiansen shall continue to provide services to [t]he District as a consultant, and not as an employee, beginning immediately thereafter." The 2006 contract further provided that "[i]t is the intent of [t]he District and Karen Christiansen that the transition be seamless as far as the operations of [t]he District and the responsibilities of Karen Christiansen are concerned and that Karen Christiansen continue to have the

3

same responsibilities she had as the Director of Planning and Facilities except for those duties and responsibilities which would be precluded due to her change in status from employee to consultant." The 2006 contract expressly permitted Christiansen "to perform work unrelated to her work as Director of Planning and Facilities and for clients other than [the] District." A separate paragraph of the 2006 contract further emphasized the termination of the employment relationship: "Both parties hereto in the performance of this Agreement will be acting in an independent capacity and not as agents, employees, partners, or joint venturers of one another."

Other provisions of the 2006 contract gave substance to Christiansen's new status as a consultant rather than an employee. For example, the 2005 contract provided for various employee benefits, such as medical and dental coverage and vacation and sick leave. The 2006 contract, in contrast, provided for no such benefits and instead merely provided that Christiansen would be paid by the hour for her services, up to a maximum annual amount that could be exceeded only with the prior written consent of the District's board. In addition, the 2005 contract did not require Christiansen to obtain any form of insurance, but the 2006 contract required her, at her own expense, to procure and maintain automobile, workers' compensation, and employer's liability insurance.

In February 2007, Christiansen assigned her interest in the 2006 contract to Strategic Concepts, LLC. The District consented in writing to the assignment. Christiansen was the sole member and owner of Strategic Concepts, but it had several other employees—one witness testified that Strategic Concepts had "[h]alf a dozen or more" employees in 2008; another gave a "[b]est estimate" of 10 or 12 employees in 2008 and 2009.

In June 2008, the District entered into a new contract with Strategic Concepts (the 2008 contract), again retaining Strategic Concepts to provide consulting services concerning "the District's planning and management of District Facilities." The 2008 contract superseded all previous contracts between the District and Strategic Concepts. The 2008 contract expressly stated that Strategic Concepts "shall be and act as an independent contractor" and that both Strategic Concepts and all of its employees

"shall not be considered officers, employees or agents of the District." (Block capitals omitted.) Like the 2006 contract, the 2008 contract provided for Strategic Concepts to be paid by the hour for its services; the hourly rate was determined by an attached schedule of different levels of Strategic Concepts personnel (ranging from "Project Executive/Director" to "Administrative/Technical Assistant" and "Clerical"). The 2008 contract also required Strategic Concepts to purchase and maintain workers' compensation and employer's liability insurance of not less than $1,000,000 and commercial general liability and automobile liability insurance of not less than $2,000,000.

The 2008 contract called for Strategic Concepts to provide the services specified in an attached three-page "Work Plan." Some of the services related to the completion of "school modernizations" work (including construction of new facilities and repair of earthquake damage) that was funded by a previous bond issue, "Measure K." The Work Plan also called for Strategic Concepts to develop a "[m]aster plan" for the future of the District's facilities and to identify funding sources, such as "bonds," to pay for any necessary work. The 2008 contract further provided that the District might require Strategic Concepts to perform "other services not otherwise included in this agreement," for which Strategic Concepts would receive compensation that would "be negotiated and approved in writing by the District." (Block capitals omitted.)

The duties of Director of Planning and Facilities included identifying companies to perform work for the District. When Christiansen located a suitable company for a particular job, she would "work with them to draw up a contract." She would then submit the contract to an assistant superintendent, who would submit it to the superintendent, who would present it to the District's board, which would vote on it at a board meeting. Christiansen never had the authority, either as an employee under the 2005 contract or as a consultant under the 2006 contract (before or after the assignment to Strategic Concepts) or as an employee of Strategic Concepts under the 2008 contract, to enter into contracts on behalf of the District. Once a contract was

approved by vote of the board, only board members and certain other individuals, not including Christiansen, had authority to sign the contract on behalf of the District.

The charges against Christiansen relate to four contracts entered into by the District. Three of those contracts were between the District and Johnson Controls, Inc. According to testimony introduced at trial, Johnson Controls is the 56th largest company in the United States, with annual sales of $38 billion. One part of its business handles energy conservation and renewable energy projects for public schools. Johnson Controls has done work for approximately 150 different school districts in California and first contracted for a project with the District in 2005. Christiansen was not involved in the District's decision to retain Johnson Controls in 2005.

In early 2007, Strategic Concepts contracted with Johnson Controls to provide consulting services to assist Johnson Controls' efforts to secure a contract with the Newport Mesa Unified School District. Under the consulting agreement, Strategic Concepts billed Johnson Controls for 89 hours of consulting work performed between February 1 and March 15, 2007, for which Johnson Controls paid Strategic Concepts $15,575. The record contains no evidence that Strategic Concepts or Christiansen performed, billed, or was paid for any additional work for Johnson Controls beyond those 89 hours. Johnson Controls did not succeed in securing the contract with the Newport Mesa Unified School District.

In February, March, and June 2007, the District entered into three contracts with Johnson Controls. (Witnesses testified that the contracts were actually "change orders" or "amendment[s]" to the District's original 2005 contract with Johnson Controls.) Christiansen advised the District to enter into the three contracts. The prosecution's theory was that Strategic Concepts' consulting agreement with Johnson Controls concerning the Newport Mesa Unified School District gave Christiansen an indirect financial interest in the District's three contracts with Johnson Controls.

The fourth charge against Christiansen relates to an amendment to the 2008 contract between the District and Strategic Concepts. Pursuant to the 2008 contract, Strategic Concepts prepared a draft master plan concerning the District's facilities;

6

Christiansen was primarily responsible for preparing it. According to the draft master plan, there were a number of serious safety concerns, including seismic safety problems, at several of the District's schools. One of Strategic Concepts' duties under the 2008 contract was to identify funding sources for implementation of the master plan, including bond financing. Christiansen advised the District that the best way to pay for the needed safety upgrades was through a bond measure, because the necessary work would be expensive. (The District's former superintendent testified that it is "very common" for school districts to use bonds to fund this kind of work, because "[t]he cost of construction projects is huge.") Eventually the District put a $334 million bond measure on the November 2008 ballot, and the measure passed.

In July 2008, Christiansen proposed that the District retain Strategic Concepts to manage certain aspects of the work to be funded by the bond measure, should it pass. On July 29, 2008, the District's board approved an amendment (the 2008 amendment) to the 2008 contract, thereby retaining Strategic Concepts to provide "program and project management services" for various projects to be funded by the bond. The 2008 amendment provided that it would go into effect only if the bond measure passed. Under the 2008 amendment, Strategic Concepts would be paid, from bond proceeds, 2 percent "of the overall project budgets as approved by the Board of Education" for program management, and 4.5 percent "of the construction value of each project as approved by the Board of Education" for project management. The prosecution's theory was that the 2008 amendment was a contract made by Christiansen in her official capacity and in which she was financially interested, in violation of section 1090.

## DISCUSSION

As we noted at the outset, section 1090 provides that "[m]embers of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." Violation of section 1090 is a crime punishable by a fine of not more than $1,000 or by imprisonment in state prison, and violators are "forever disqualified from holding any office in this state." (§ 1097.)

7

Christiansen argues that her convictions must be reversed and the charges dismissed on numerous grounds, including that (1) at all relevant times she was neither a member of the District's board nor an officer or employee of the District, (2) she never had any capacity to make any contracts for the District, so no contracts made by her in her official capacity exist, (3) she was not financially interested, within the meaning of section 1090, in the District's contracts with Johnson Controls, and (4) her role in procuring the 2008 amendment for program and project management services on the work funded by the 2008 bond measure did not violate section 1090. We decide only the first issue, which disposes of the entire appeal.

It is undisputed that Christiansen was neither a member of the District's board nor an officer of the District. It is also undisputed that after entering into the 2006 contract with the District, she was an independent contractor both in title and in substance.

"A statute will be construed in light of the common law unless the Legislature ""'clearly and unequivocally'"" indicates otherwise. [Citation.]" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1086-1087 (*Reynolds*).) In particular, if "'a statute refer[s] to employees without defining the term,'" then "'courts have generally applied the common law test of employment.' [Citation.]" (*Id.* at p. 1087; see also *People v. Palma* (1995) 40 Cal.App.4th 1559, 1565-1566 ["as a general rule, when 'employee' is used in a statute without a definition, the Legislature intended to adopt the common law definition and to exclude independent contractors"].) "'California courts have applied this interpretive rule to various statutes dealing with public and private employment.' [Citation.]" (*Reynolds*, *supra*, 36 Cal.4th at p. 1087.) We review issues of statutory interpretation de novo. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

Section 1090 does not define the term "employees." We therefore apply the common law test of employment. (*Reynolds*, *supra*, 36 Cal.4th at p. 1087.) Under the common law test, independent contractors are not employees. (See 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 21, pp. 60-61.) Because it is undisputed that at all relevant times Christiansen was an independent contractor, she was

8

not an employee within the meaning of section 1090, so her convictions must be reversed and the charges against her dismissed.

Respondent argues, as the prosecution did in the trial court, that an independent contractor can, under certain conditions, be an employee within the meaning of section 1090. No published criminal case has so held. Rather, respondent's argument is based on two civil cases involving section 1090, *HUB City Solid Waste Services, Inc. v. City of Compton* (2010) 186 Cal.App.4th 1114 (*HUB City*) and *California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682 (*California Housing*). We express no opinion on the soundness of those opinions in the *civil* context, but we hold that their expansion of the statutory term "employees" to apply to independent contractors does not apply to *criminal* prosecutions for violation of section 1090. At least for purposes of criminal liability under section 1090, an independent contractor is not an employee.

In *California Housing*, one of the defendants was an attorney who had served as general counsel for the plaintiff agency from 1984 to 1990 and then as outside counsel from 1991 through 2000; the alleged violations of section 1090 occurred during the latter period. (*California Housing*, *supra*, 148 Cal.App.4th at pp. 685-687.) In the agency's civil suit against the attorney and other defendants for fraud, legal malpractice, violation of section 1090, and related claims, the Court of Appeal affirmed the trial court's application of section 1090 to the outside counsel defendant. (*Id.* at p. 690.) We decline to apply *California Housing*'s interpretation of section 1090 for several reasons. First, it fails to follow the Supreme Court's guidance concerning interpretation of the undefined statutory term "employees." (*Reynolds*, *supra*, 36 Cal.4th at pp. 1086-1087.) Second, it is a civil case, and the matter before us is a criminal case. Third, none of the cases cited in *California Housing* provides any support for the proposition that an independent contractor can be an employee within the meaning of section 1090.[2]

---

[2] *California Housing* cited *People v. Gnass* (2002) 101 Cal.App.4th 1271, 1298 (*Gnass*), *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 351 (*S. G. Borello*), *People v. Honig* (1996) 48 Cal.App.4th 289, 314

9

*HUB City* adopted *California Housing*'s broad interpretation of the term "employees" in section 1090. (*HUB City*, *supra*, 186 Cal.App.4th at pp. 1124-1125.) We decline to follow *HUB City* for the same reasons we decline to follow *California Housing*: It fails to follow the Supreme Court's guidance concerning interpretation of the undefined statutory term "employees"; it is a civil case; and it relies on cases (primarily a subset of those cited in *California Housing*) that provide no support for the proposition that an independent contractor can be an employee within the meaning of section 1090.[3]

Neither respondent, *HUB City*, *California Housing*, nor any of the cases on which they rely provides any basis to conclude that the Legislature has clearly and unequivocally indicated that the term "employees" in section 1090 should not be interpreted in terms of the common law test of employment. (See *Reynolds*, *supra*, 36 Cal.4th at pp. 1086-1087.) We accordingly apply the general rule that, in the absence of a statutory definition of "employees," the common law definition governs.

---

(*Honig*), *Stigall v. City of Taft* (1962) 58 Cal.2d 565 (*Stigall*), *Thomson v. Call* (1985) 38 Cal.3d 633 (*Thomson*), *Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533 (*Campagna*), *Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278 (*Schaefer*), and *Terry v. Bender* (1956) 143 Cal.App.2d 198 (*Terry*). In *Gnass*, it was undisputed that the defendant was an "officer or employee" within the meaning of section 1090, so the opinion contains no analysis of the issue. (*Gnass*, *supra*, 101 Cal.App.4th at p. 1287, fn. 3.) *S. G. Borello* did not involve section 1090 but rather concerned the workers' compensation statutes, which have their own statutory definition of "employee" (section 1090 does not provide one) that does not apply to independent contractors. (*S. G. Borello*, *supra*, 48 Cal.3d at p. 349.) *Honig*, like *Gnass*, does involve section 1090 but says nothing about the meaning of the statutory term "employees" (defendant Honig was an elected official). (See *Honig*, *supra*, 48 Cal.App.4th at p. 304.) *Campagna* and *Thomson* likewise involve section 1090 but say nothing about the meaning of the term "employees." And *Stigall*, *Schaefer*, and *Terry* were all decided before 1963, the year in which the Legislature added the term "employees" to section 1090. (Stats. 1963, ch. 2172, § 1, pp. 4559-4560.)

[3] Apart from *California Housing*, the cases on which *HUB City* relies are *Gnass*, *Campagna*, *Schaefer*, and *Klistoff v. Superior Court* (2007) 157 Cal.App.4th 469. The first three cases are inapposite for reasons previously noted. (See footnote 2, *ante*.) In *Klistoff v. Superior Court*, it was undisputed that the defendants were not employees, so the case contains no analysis of the issue. (See *Klistoff*, *supra*, at p. 478.)

(*Id.* at p. 1087; *People v. Palma*, *supra*, 40 Cal.App.4th at pp. 1565-1566.)  Therefore, at least for purposes of criminal prosecution under section 1090, an independent contractor is not an employee within the meaning of the statute.  We consequently reverse Christiansen's convictions and direct the trial court to dismiss the charges against her, and we need not address Christiansen's other claims of error.

DISPOSITION

Christiansen's convictions on all charges against her are reversed, her sentence and the restitution award are vacated, and the superior court is directed to enter an order dismissing all charges against her.

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, J.

We concur:



MALLANO, P. J.



CHANEY, J.

11