Filed 3/14/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E077504 |
| v. | (Super.Ct.Nos. RIF1704920 & SWF1907319) |
| CARL STEVEN TICE, JR., | |
|     Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge. Affirmed.

Bruce L. Kotler, by appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

In 2017, defendant and appellant, Carl Steven Tice, Jr., was arrested and charged with committing a felony offense. He was later charged with three counts of battery on a custodial officer (counts 1-3; Pen. Code, § 243.1[1]) and one count of battery on a detention facility employee by gassing (count 4; § 243.9, subd. (a)), arising out of four separate incidents that occurred while he was confined awaiting trial. Defendant was convicted on all four counts in a court trial.

On appeal, defendant challenges only his conviction on count 4 for a violation of section 243.9, subdivision (a). The statute provides: "Every person confined in any local detention facility who commits a battery by gassing upon the person of any peace officer . . . or employee of the local detention facility is guilty of aggravated battery . . . ." (§ 243.9, subd. (a).) Subdivision (b) of the statute defines gassing as: "intentionally placing or throwing, or causing to be placed or thrown, upon the person of another, any human excrement or other bodily fluids or bodily substances or any mixture containing human excrement or other bodily fluids or bodily substances that results in actual contact with the person's skin or membranes."

In challenging his conviction on count 4, defendant argues that (1) because the alleged victim testified she was employed by the county of Riverside, she was not an " 'employee of a local detention facility' " within the meaning of section 243.9, subdivision (a), and (2) there was insufficient evidence to establish that the substance he

---

[1] Undesignated statutory references are to the Penal Code.

2

threw on the victim was a bodily fluid, bodily substance, or a mixture containing a bodily fluid or bodily substance. We disagree on both points and affirm the judgment.

## II. FACTS & PROCEDURAL HISTORY

### A. *Background and Charges*

In 2017, defendant was arrested and charged with committing a felony offense. While confined and awaiting trial on this charge,[2] defendant allegedly engaged in four separate altercations, resulting in additional charges. Specifically, defendant was charged with three counts of battery on a custodial officer (counts 1-3; § 243.1) and one count of battery on a detention facility employee by gassing (count 4; § 243.9, subd. (a)). The information also alleged that defendant had previously been convicted of two prior strike offenses within the meaning of section 667, subdivisions (c) and (e).

### B. *Relevant Evidence at Trial*[3]

After his arrest, defendant was confined in the Cois Byrd Detention Center (CBDC). The CBDC is a local jail where Riverside County Sheriff's deputies maintain custody of prisoners.

Count 4 charged defendant with aggravated battery by gassing arising out of an incident on August 3, 2020 involving C.P. When asked to describe what she did for a

---

[2] Defendant was found incompetent to stand trial for a portion of the time between his initial arrest and trial.

[3] Because defendant's appeal challenges only the sufficiency of the evidence to support his conviction on count 4, we summarize only the evidence relevant to that charge.

3

living, C.P. testified that she was a recreational therapist at CBDC who provided recreational services to inmates. C.P. identified Riverside County as her employer and confirmed that her employment involved working within CBDC itself.

C.P. estimated that prior to August 3, 2020, she worked with defendant for "probably about six months" and saw him "three [or] four times a week," "if not daily," during this time. During this time period, she believed she witnessed defendant masturbate at least once a week but clarified that she never directly saw defendant's penis. Instead, defendant would use a picture or cardboard to cover his hands or, alternatively, she would see defendant with his hands down his pants, shaking his hands in his groin area. When she witnessed this behavior during sessions, she would ask defendant to either place his hands on his cell door or in another location where she could see them.

On August 3, 2020, C.P. approached defendant's cell door to check on him. She noticed defendant's hands engaged in movement and believed defendant was masturbating, so she asked defendant to place his hands up on his cell door. Defendant cursed at her in response. C.P. then walked away from defendant's cell door and approached a neighboring cell door to speak with a different inmate. While she was speaking with the individual detained in the neighboring cell, she was "sprayed" with a substance coming from defendant's cell.[4]

---

[4] The cell doors in this location were sliding doors, and there was a small gap measuring approximately half of an inch between the door and wall when the cell door was closed.

4

According to C.P., the amount of substance sprayed on her was less than a "glass of water" but drips came into contact with her glasses, face, face mask and arm. C.P. described the substance as a "clear, light-white liquidy substance." She also stated that the substance was sticky and stuck to her glasses, such that she was required to physically soak her glasses in water to wash the substance off. C.P. testified that she had personal experience seeing both semen and milk and, in her opinion, the substance appeared to be semen.

On cross-examination, C.P. testified that she was not a contract worker. C.P. confirmed that, as an employee, she had access to all of the detention records for patients within the CBDC, and she entered behavioral health notes directly into CBDC's record keeping system. She provided recreational therapy services to almost all or most of the inmates in the section of the jail where defendant was housed. C.P. admitted that she did "not know a hundred percent" what the substance was, but she was basing her identification of the substance that was sprayed on her upon its texture.

Defendant testified in his own defense. Defendant stated that prior to the August 3, 2020 incident, he had declined recreational therapy, been taken off of C.P.'s caseload, and believed C.P. was harassing him. On August 3, 2020, C.P. walked to defendant's cell door and ordered him to place his hands up. Defendant became upset because he believed C.P. was inappropriately acting like an officer, and he had already asked C.P. not to come by his cell on multiple prior occasions. As a result, he threw his lunchtime milk at C.P. through the gap between his cell door and wall. He denied that the substance was semen.

Two sheriff's deputies testified regarding the incident. The first deputy testified that he was standing approximately five feet from C.P. during the August 3, 2020 incident. He was facing away from C.P. when he "heard a loud sound." When he turned around, he saw C.P. with some kind of liquid on her "face mask, glasses, and arm." The deputy testified that he was personally familiar with the appearance of both semen and milk. Based upon the consistency and the color of the substance that he observed on C.P., he believed the substance was semen. However, in his written report, he only noted that the substance was "an unknown white liquid," and he recalled finding an empty milk container in defendant's cell after the incident.

The second sheriff's deputy was called as a witness for the defense. He was working in the same room as C.P. on August 3, 2020, but he was on the second floor during the incident. He spoke with C.P. after she had been taken to the medical office after the incident occurred. He recalled that C.P. reported that she was "sprayed with something" and, as a result, the deputy wrote in a report that C.P. was sprayed by a "milk-like liquid." By the time he spoke with C.P., he could only see some substance on her glasses and could not identify the substance. However, he saw liquid on the floor of the area where the incident occurred. With respect to the liquid on the floor, the deputy described it as "whitish clear" and "milk-like" but that it also "didn't look like a hundred percent milk."

C. *Verdict and Sentence*

The trial court found defendant guilty on all counts and further found true the allegations that defendant had previously suffered two prior strike convictions.

6

Defendant was sentenced to six years in state prison on count 4 (§ 243.9, subd. (a)), representing the middle term of three years, doubled as the result of the true finding that he suffered prior strike convictions (§ 667, subds. (c), (e)). For each remaining count (§ 243.1), defendant was sentenced to a consecutive term of 16 months in state prison, representing one-third the middle term of two years, doubled as the result of the true finding that he suffered prior strike convictions (§667, subds. (c), (e)).

III. DISCUSSION

A. *Sufficient Evidence Supports a Finding C.P. Was an Employee of the Local Detention Facility Within the Meaning of Section 243.9, Subdivision (a)*

Defendant's first contention on appeal is that the evidence was insufficient to show C.P. was an " 'employee of a local detention facility' " within the meaning of section 243.9, subdivision (a). In making this argument, defendant does not dispute that C.P. identified the county as her employer, stated that she was an employee and not a contractor, and testified that her job consisted of providing recreational services directly to inmates housed at the CBDC. However, defendant contends that C.P. does not come within the scope of section 243.9, subdivision (a), because "the county health system, not the detention facility or even the sheriff's department employs her." We disagree.

Both defendant and the People agree that defendant's argument presents an issue of statutory construction. " 'The proper interpretation of a statute is a question of law for our independent determination. . . . Likewise, the application of a statute to undisputed facts is a question of law, subject to our de novo, or independent, review on appeal.' " (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 7.) In conducting our review, "[w]e look

first to the plain meaning of the words used in the statute; then to secondary rules of construction and legislative history; and finally to considerations regarding the impact of any practical application of a proposed interpretation." (*Ibid.*; see *People v. Valdez* (2018) 28 Cal.App.5th 308, 313 [If the meaning remains unclear after the first two steps, " 'we apply "reason, practicality, and common sense to the language at hand" "to make them workable and reasonable." ' "].)

As defendant and the People have both noted, section 243.9 does not define the phrase "employee of the local detention facility"; there is no legislative history to suggest the legislature's intended meaning;[5] and there is no published case authority interpreting

_____

[5] It is true that as a general rule of statutory construction, "when 'employee' is used in a statute without a definition, the Legislature intended to adopt the common law definition and to exclude independent contractors." (*People v. Palma* (1995) 40 Cal.App.4th 1559, 1565-1566.) However, as our Supreme Court has cautioned, the common law definition of " 'employee' " can often be "substantially different" from its use in a statute because "the common law tests were developed to define an employer's liability for injuries caused *by* his employee." (*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 352.) Thus, our high court has instructed that statutory purpose should be "the touchstone for deciding whether a particular category of workers should be considered employees," and the common law definition should not be applied unless it "best effectuates the underlying legislative intent and objective of the statutory scheme at issue." (*Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903, 934-935.)

As this court has previously recognized, the statutory purposes of section 243.9 are to (1) "expand the scope of battery by gassing to include facilities other than state prison" (*In re A.M.* (2014) 225 Cal.App.4th 1075, 1084), and (2) "to ensure that a battery by gassing does not lead to the transmission of communicable diseases or infections" (*People v. Giddens* (2021) 72 Cal.App.5th 145, 154). Neither of these purposes is advanced by applying the common law factors normally used to establish an employer's vicarious liability for injuries caused by an employee. Thus, the common law definition of employee does not appear to have any meaningful application in the context of section 243.9 and resorting to this general rule of statutory construction is unhelpful. Notably, defendant does not argue that we should resort to this canon of construction in order to resolve any issue in this case.

8

the phrase as used in the statute. We therefore turn to reason and practicality in applying section 243.9 to the otherwise undisputed facts regarding C.P.'s employment.[6]

The undisputed evidence in this case established that the CBDC is a county jail. Under any reasonable reading of section 243.9, the county jail clearly constitutes a "local detention facility" within the meaning of the statute. (*In re A.M.*, *supra*, 225 Cal.App.4th at p. 1082 ["[T]he plain, commonsense meaning of 'any local detention facility' is a facility used for detaining persons operated by a county or city government as opposed to the state government."]; *People v. Giddens*, *supra*, 72 Cal.App.5th at p. 153 ["Section 243.9 governs gassing in a jail or local detention facility . . . ."].) However, contrary to defendant's suggestion, we do not believe that a county jail can easily be analogized to a private company for purposes of determining who is an employee of the facility.

By statute, the county sheriff is vested with the authority to manage county jails. (Gov. Code, § 26605; Pen. Code, § 4000; *People ex rel. Deputy Sheriffs' Ass'n. v. County*

---

[6] We observe that on more than one occasion, Courts of Appeal have resorted to this last step of statutory interpretation in order to interpret the meaning of " 'local detention facilities' " as used in section 243.9. (*People v. Valdez*, *supra*, 28 Cal.App.5th at pp. 313-314 ["turning to reason and practicality" because "the language of the statute, by itself, does not answer [the] question"]; *In re A.M.*, *supra*, 225 Cal.App.4th at pp. 1082-1083 [relying on the plain words of statute, but also resorting to " ' "reason, practicality, and common sense" ' " in order to reject appellant's proposed interpretation of "local detention facility"].) Clearly, if the meaning of " 'local detention facility' " cannot be clearly ascertained from the plain words of the statute and traditional extrinsic aids, it is unlikely that these same tools of statutory interpretation will be sufficient to ascertain the meaning of the phrase " 'employee of the local detention facility.' " (*In re A.M.*, at p. 1080.)

*of Santa Clara* (1996) 49 Cal.App.4th 1471, 1490 ["Pursuant to general law, the sheriff takes charge of and keeps the county jail and the prisoners in it."].)  While the office of sheriff is an independent office created by the state constitution (Cal. Const., art. XI, §§ 1, subd. (b), 4, subd. (c)), "[t]he sheriff is a county officer, not a state official" (*Penrod v. County of San Bernardino* (2005) 126 Cal.App.4th 185, 190).[7]  More importantly, the sheriff's department is a political subdivision of the county and not a separate legal entity (*Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995, 1000, fn. 1 ["The Sheriff's Department is not a separate government entity, but [it] is a department" of the county.]; *Trejo v. County of Los Angeles* (2020) 50 Cal.App.5th 129. 135 [sheriff's department is a political "subunit" of the county]), and those employed by the sheriff's department, including sworn peace officers, are paid by the county (see *County of Kern v. Sparks* (2007) 149 Cal.App.4th 11, 16-17 [county board of supervisors, not the sheriff, has authority to set the compensation of employees in the sheriff's department]).

Additionally, the county is the entity responsible for the construction and maintenance of county jails (Gov. Code, §§ 25351 [county authorized to build and repair jails], 25380 [county may construct and operate jail located in another county]), as well as the entity responsible for providing necessary services to those confined within the

---

[7] An exception exists when the sheriff is performing law enforcement functions. (*Penrod*, *supra*, 126 Cal.App.4th at p. 190 ["[W]hen performing law enforcement functions [, the sheriff] is a state actor"]; *Beck v. County of Santa Clara* (1988) 204 Cal.App.3d 789, 797 [observing that both the state Legislature and the county board of supervisors share power of the office of sheriff].)  However, that distinction is not relevant in this case, as it is undisputed that C.P. was employed to provide recreational therapy services and not a law enforcement function.

county jail (Gov. Code, § 29602 [county is financially responsible for recreational and other services for those confined in jail]; Pen. Code, § 4015 [county financially responsible for feeding and clothing those confined in jail]; *County of Lassen v. State of California* (1992) 4 Cal.App.4th 1151, 1155 ["[T]he Legislature has mandated that the normal cost of operating county jails in accordance with the State's minimum standards shall be borne by the counties."].)  The county has constitutional and statutory authority to hire employees in order to discharge these duties.  (Gov. Code, § 25207 [board of supervisors "may do and perform all other acts . . . , which are necessary to the full discharge of the duties of the legislative authority of the county government."]; Cal. Const. art. XI, § 1, subd. (b); *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285 ["The constitutional language is quite clear and quite specific:  the *county*, not the state, not someone else, shall provide for the compensation of its employees."].)

Thus, as a matter of practical application, we decline to adopt defendant's interpretation of the phrase "employee of the local detention facility" to require a showing that the victim was legally employed by a separate entity bearing the detention facility's name or legally employed by the sheriff's department.  At least in the context of a county jail, there is no reason to presume that any independent legal entity other than the county exists in relation to the operation of the jail.  In fact, even one of the sheriff's deputies who testified in this case answered that he was employed by the County of Riverside when asked to identify his employer.  Where it is undisputed that the local

detention facility at issue is a county jail,[8] we conclude that a person employed by the county to work within that jail is an "employee of the local detention facility" within the meaning of section 243.9. In other words, when a county employee is assigned to work in a local detention facility operated by the county and is paid by the same county government that pays all other employees at that facility, that employee may be fairly classified as an employee of that detention facility. Reason and practicality point to the unescapable conclusion that C.P. is an employee of the detention facility within the meaning of the statute.

B. *Sufficient Evidence Supports a Finding that Defendant Sprayed C.P. With a Bodily Fluid*

Defendant also argues that there was insufficient evidence that the substance that he sprayed on C.P. was a bodily fluid as required by section 243.9, subdivision (b). Defendant concedes that semen qualifies as a bodily fluid within the meaning of section 243.9, subdivision (b), but challenges the sufficiency of the evidence to establish that the substance he sprayed on C.P. was semen. We conclude that substantial evidence in the record supports the trial court's conclusion on this point.

---

[8] We express no opinion regarding whether being employed by a county might preclude a finding that the victim was an "employee of the local detention facility" in other contexts. Given the numerous types of institutions which might be considered a "local detention facility" within the meaning of section 243.9, finding a comprehensive definition will prove elusive, and doing so is unnecessary to the resolution of the question presented in this appeal.

12

" 'In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 656-657.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 330; *People v. Polk* (2019) 36 Cal.App.5th 340, 348 [Substantial evidence includes " ' "all reasonable inferences to be drawn" ' " from the evidence.].)

In this case, C.P. testified that she was personally familiar with what semen looked like and believed the substance on her face was semen based upon its texture. A sheriff's deputy who personally saw the substance on C.P.'s face testified that he was personally familiar with what semen looked like and believed the substance was semen based upon its apparent color and texture. It is well settled that "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Brown* (2014) 59 Cal.4th 86, 106; *People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.) Thus, the testimony of C.P. and the sheriff's deputy constitutes substantial evidence upon which the trial court could rely to conclude that the substance that defendant sprayed on C.P. was a bodily fluid within the meaning of section 243.9, subdivision (b).

The fact that C.P. could not state with absolute certainty that the substance was semen, and the fact that the substance was not scientifically tested to confirm it was semen, does not justify reversal on appeal. Substantial evidence does not mean evidence free of ambiguities or inconsistencies (see *People v. Clark* (2011) 52 Cal.4th 856, 951), and it is the exclusive province of the trial judge or jury to determine the credibility of witnesses and the weight to be afforded any evidence (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Reed* (2018) 4 Cal.5th 989, 1006-1007 [appellate court cannot reconsider credibility of a witness's testimony or its weight when determining sufficiency of evidence]). Likewise, the fact that other witnesses expressed a contrary opinion that the substance was milk is unavailing. A "defendant does not defeat the sufficiency of the evidence merely by offering 'competing inferences he wishes the jury had drawn' " (*People v. Disa* (2016) 1 Cal.App.5th 654, 667, fn. 9); and "[t]he existence of possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify [a reviewing court's] rejecting the determination of the trier of fact . . . ." (*People v. Redrick* (1961) 55 Cal.2d 282, 290; see *People v. Abilez* (2007) 41 Cal.4th 472, 504 [" ' "[T]he opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' "]).

Because two witnesses with personal knowledge testified that, in their opinion, the substance sprayed on C.P. was semen, substantial evidence in the record supports the trial court's conclusion that the substance was a bodily fluid within the meaning of section 243.9, subdivision (b), and we decline to reverse defendant's conviction on this ground.

## IV.  DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

FIELDS _____
                                                                   J.

We concur:

CODRINGTON _____
          Acting P. J.


MENETREZ _____
                    J.