[No. B195454. Second Dist., Div. Three. Nov. 30, 2007.]

MICHAEL KLISTOFF, JR., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF SOUTH GATE, Real Party in Interest.

## Counsel

Michelman & Robinson, Dean B. Herman and Jeffrey D. Farrow for Petitioners.

No appearance for Respondent.

Lillie Hsu; Adorno Yoss Alvarado & Smith, Raul F. Salinas, Rick D. Navarrette, T. Matthew Hansen; Greines, Martin, Stein & Richland and Timothy T. Coates for Real Party in Interest.

**OPINION**

**KITCHING, J.—**

## INTRODUCTION

Defendants Michael Klistoff, Jr. (Klistoff), and All City Services, Inc., bring a petition for writ of mandate or prohibition challenging the overruling of the demurrer to a cause of action for conspiracy to violate Government Code section 1090[1] in the complaint by plaintiff City of South Gate (the City). The complaint alleges that Klistoff, through All City Services, made payments to Albert Robles (Robles), an official of the City, in exchange for Robles's efforts to ensure that Klistoff & Sons, Inc. (K&S), in which Klistoff was vice-president and operations manager, obtained a $48 million 10-year contract from the City to provide refuse collection and recycling services.

The question in this petition is whether Klistoff and his company, All City Services, who are not officials or employees of a public entity as defined in section 1090 and who are not parties to the contract between the City and K&S, can be held liable for conspiracy to violate section 1090. We conclude that because only public officials or employees can violate section 1090, Klistoff and All City Services, who are not public officials or employees, cannot be held liable for conspiracy to violate section 1090. Moreover, we further conclude that under these circumstances section 1092 provides the City with no remedy against Klistoff and All City Services. Section 1092 allows the avoidance of contracts made in violation of section 1090. A public entity, such as the City, can recover consideration it has paid pursuant to the void contract without restoring benefits received under that contract. Klistoff and All City Services, however, did not receive payments from the City pursuant to its contract with K&S. Therefore the City cannot recover consideration it paid pursuant to the void contract from Klistoff and All City Services.

Because the complaint does not state a cause of action against Klistoff and All City Services for conspiracy to violate section 1090, we grant the petition.

## STANDARD OF REVIEW

A demurrer tests the legal sufficiency of factual allegations in a complaint. (*Title Ins. Co. v. Comerica Bank—California* (1994) 27 Cal.App.4th 800, 807 [32 Cal.Rptr.2d 735].) In reviewing the sufficiency of a complaint against a

---

[1] Unless otherwise specified, statutes in this opinion will refer to the Government Code.

general demurrer, this court treats the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. This court also considers matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## FACTUAL AND PROCEDURAL HISTORY

In their petition, defendants Klistoff and All City Services, Inc., challenge the overruling of the demurrer to the second cause of action for conspiracy to violate section 1090 in the complaint by plaintiff City. The complaint identified Klistoff as president, shareholder, and registered agent of All City Services, a waste hauling business. Klistoff was also vice-president and operations manager of K&S, a refuse collection and waste disposal company. The complaint named as defendants Lou Moret (Moret), Raymond Garubo, and GWS Wholesale Nursery and Supply, Inc., and its shareholder and president, George Garrido (Garrido). The complaint did not name K&S as a defendant.

The complaint arose from what it identified as corruption of a public official in connection with the selection and approval of K&S as the City's provider of residential and commercial/industrial refuse collection, solid waste handling, and recycling services under a franchise agreement between the City and K&S, dated September 18, 2001. The complaint alleged that Robles, formerly treasurer of the City, engaged in an illegal conspiracy with Klistoff, Garrido, GWS Wholesale Nursery and Supply, Inc., Moret, and All City Services to ensure that K&S received this contract from the City. The City sought, inter alia, a judgment pursuant to section 1090 et seq. that defendants were liable for reimbursement of all monies paid by the City to K&S under the franchise agreement, less credit for sums the City already recovered.

The complaint alleged that an elected five-member city council governs the City, which has approximately 100,000 residents. The city council annually selects one member to serve as mayor on a rotating basis. The city council's powers include the ability to award contracts for services required by the City, one of which includes refuse collection, solid waste handling, and recycling (refuse services).

Robles was an elected member of the South Gate City Council from 1992 to 1997, served as the City's mayor from 1994 to 1997, was elected treasurer of the City in 1997, and was reelected treasurer in 2001.

The complaint alleged that from January 2000 to January 2003, Robles, Moret, and Klistoff made a series of illicit agreements to defraud the City of Robles's honest services. In exchange for Klistoff's gifts and campaign contributions to Robles's general purpose committee, Citizens for Good Government, Robles used his official City position to cause the City's staff to recommend that the City negotiate exclusively with K&S and award the franchise agreement to K&S. Between January 17, 2000, and February 28, 2001, Klistoff made payments exceeding $10,000 through his shell company, All City Services, to vendors on Robles's behalf to purchase goods or as in-kind political contributions to Citizens for Good Government. Robles ordered the city manager to hire Moret as a consultant on July 10, 2001, to consult on major city projects including the selection process for the City's refuse services contract. Robles caused Moret to establish and be placed in charge of the City's refuse collection and recycling search committee (the Committee), which evaluated written bids and oral presentations by bidders for the refuse services contract and made a recommendation to the city council as to whom it should award that contract. In late July 2001, Robles ordered Moret to ensure that K&S was awarded the refuse services contract and directed Moret to identify a consultant to assist K&S in its oral presentation to the Committee. Moret recommended his friend, Garubo, to Klistoff, who hired Garubo in August 2001.

Before K&S's oral presentation to the Committee, Robles provided Garubo with a list of confidential questions the Committee intended to ask bidders during oral presentations. Garubo provided those confidential questions to Klistoff, making K&S the only bidder which had access to the Committee's confidential questions before the oral presentation. Based in part on K&S's oral presentation, the Committee recommended that the city council approve K&S as the City's exclusive provider of refuse services. On August 28, 2001, the city council voted to engage in exclusive negotiations with K&S to provide refuse services to the City.

Garrido was Robles's former business partner and longtime political supporter. Robles suggested or instructed Garrido to approach Klistoff and demand that K&S retain Garrido as a consultant regarding the City's refuse services contract. Garrido told Klistoff that K&S had to hire Garrido as a consultant in order to obtain the refuse services contract, and on September 17, 2001, Klistoff hired Garrido as a consultant to lobby the City and take other actions to assist K&S to obtain that contract. K&S agreed to pay Garrido $350,000 per year for the life of the refuse services contract. In

exchange for Robles's agreement to use his influence on the selection process to ensure that K&S received the refuse services contract, Garrido agreed to kick back to Robles a portion of fees K&S paid Garrido under his consulting agreement.

On September 18, 2001, the city council voted to award the franchise agreement to K&S. The franchise agreement had a contract value of $48 million over a 10-year period, with an option to extend the franchise agreement for an additional five years. Between April 11, 2001, and 2004, at Klistoff's direction, K&S paid Garrido $437,500 for purported consultant services provided to K&S.

Between January 2002 and June 2005, the City paid K&S substantial sums under the franchise agreement.

The complaint alleged that Klistoff violated section 1090 in that Klistoff possessed financial interests in and realized a benefit from the franchise agreement by the creation of an exclusive relationship between K&S and the City with respect to refuse services and the award of a $48 million franchise agreement to K&S.

The second cause of action for conspiracy to violate section 1090 alleged that from January 2000 until January 2003, defendants entered into a conspiracy with Robles to corrupt and rig the selection process for the City's refuse services contract and to defraud City voters of their right to the honest services of Robles, their elected official. In exchange for gifts and campaign contributions made to Robles's Citizens for Good Government committee and for payments made to vendors and friends on Robles's behalf, Robles used his City position to cause City staff to recommend award of the franchise agreement to K&S. Klistoff created a shell corporation, All City Services, to conceal the source of payments to Robles. Between January 17, 2000, and February 28, 2001, Klistoff made more than $10,000 in payments through All City Services to vendors on Robles's behalf for the purchase of goods or as in-kind political contributions to Citizens for Good Government.

The complaint alleged that defendants engaged in a conspiracy to violate section 1090, and Klistoff as officer, manager, employee or agent of K&S conspired with Robles to provide Robles with a financial interest in the franchise agreement, which contract was made by Moret and Robles in their official capacities. Robles and Klistoff realized benefits from the franchise

agreement by payments through All City Services to vendors on Robles's behalf for the purchase of goods or as in-kind political contributions to Citizens for Good Government, by creating an exclusive financial relationship between K&S and the City, and by the retention of Garrido (Robles's political supporter and former business partner) as a consultant for K&S and K&S's payment of $437,500 to Garrido.

The complaint alleged that by providing Robles with a direct and indirect financial interest in the franchise agreement, defendants violated section 1090, which entitled the City to restitution from defendants of all sums paid to K&S pursuant to the franchise agreement.

In November 2004, the United States indicted Robles, Klistoff, and others for violating 18 United States Code sections 1341, 1343, and 1346 (honest services, mail, & wire fraud), 18 United States Code section 1957 (money laundering), 18 United States Code section 666 (theft or bribery concerning programs receiving federal funds), and 18 United States Code section 2(b). The United States presented evidence of a scheme by Robles, Klistoff, Garrido and others to defraud the City of public funds by engaging in criminal or unlawful activity in the award of the franchise agreement to K&S, including making illegal monetary campaign contributions, bribes, and payments to Robles's friends, relatives, and business acquaintances.

On March 28, 2005, Klistoff pleaded guilty to violating 18 United States Code sections 2, 1341, 1343, and 1346, by participating in, or aiding and abetting, a scheme or plan to deprive the City of its right to Robles's honest services; acting with intent to defraud, deceive, and deprive the City of Robles's honest services; and using or causing someone to use the mails to carry out or attempting to carry out the scheme or plan. On July 28, 2005, a jury in federal court convicted Robles of violations of federal statutes related to bribery, deprivation of honest services, and illegal use of mail and wire services, and convicted Garrido of 11 criminal charges.

On October 12, 2006, the trial court overruled a demurrer by Klistoff and All City Services to the second cause of action for conspiracy to violate section 1090. On December 11, 2006, Klistoff and All City Services filed a petition for writ of mandate and/or prohibition directing the trial court to vacate that ruling and to enter a new and different order sustaining the

demurrer to the second cause of action for conspiracy without leave to amend. On January 24, 2007, this court issued an order to show cause why the relief requested in the petition should or should not be granted.

## ISSUE

This petition presents the issue whether a defendant who is not an employee or an official of a public entity can be held liable as a coconspirator for violating section 1090.

## DISCUSSION

1. *The Statutory Prohibition of Contracts Made by Public Entities in Which an Officer or Employee of the Public Entity Has a Financial Interest*

Section 1090 states, in relevant part: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

"[A]n official has a financial interest in a contract if he might profit from it." (*People v. Honig* (1996) 48 Cal.App.4th 289, 333 [55 Cal.Rptr.2d 555].) "The interest proscribed by Government Code section 1090 is an interest in the contract. The purpose of the prohibition is to prevent a situation where a public official would stand to gain or lose something with respect to the making of a contract over which in his official capacity he could exercise some influence." (*People v. Vallerga* (1977) 67 Cal.App.3d 847, 867–868, fn. 5 [136 Cal.Rptr. 429].) Section 1090 uses the word "made" in the broad sense to encompass "preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications and solicitation for bids. [Citation.] Such construction is predicated upon the rationale that government officers and employees are expected to exercise absolute loyalty and undivided allegiance to the best interests of the governmental body or agency of which they are officers or employees, and upon the basis that the object of such a statute is to remove or limit the possibility of any personal influence, either directly or indirectly which may bear on an officer's or employee's decision." (*Millbrae Assn. for Residential Survival v. City of Millbrae* (1968) 262 Cal.App.2d 222, 237 [69 Cal.Rptr. 251].)

2. *A Cause of Action for Conspiracy to Violate Section 1090 Does Not Lie Against Klistoff and All City Services*

This petition raises the question whether Klistoff and All City Services, who are not officials or employees of a public entity, can be held liable for violating section 1090 on a conspiracy theory.

### a. Civil Conspiracy

█ "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454] (*Applied Equipment Corp.*).)

The act done and resulting damage to the plaintiff, not the conspiracy to act, is the essence of civil conspiracy. (*Applied Equipment Corp., supra,* 7 Cal.4th at p. 511.) The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy, and (2) damage to the plaintiff resulting from an act or acts done in furtherance of the common design. The existence of a civil conspiracy makes each participant in the wrongful act responsible as a joint tortfeasor for all damages resulting from the wrong, whether or not a participant was a direct actor and regardless of the degree of his activity. (*Ibid.*)

### b. A Coconspirator Must Be Legally Capable of Committing the Tort

Defendants argue that they cannot be liable for conspiracy to violate section 1090 because they cannot be directly liable for violating that statute because they are not the public officials or employees mentioned in section 1090. They rely on the following rule: "By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." (*Applied Equipment Corp., supra,* 7 Cal.4th at p. 511.)

### c. Klistoff and All City Services Were Not Legally Capable of Violating Section 1090 Because They Were Not Public Officials or Employees Identified in and Subject to the Statute, and Therefore Cannot Be Subject to Liability for Conspiracy to Violate Section 1090

█ Section 1090 identifies the persons who can violate it: "[m]embers of the Legislature, state, county, district, judicial district, and city officers or employees." Because neither Klistoff nor All City Services were such

persons, they were legally incapable of committing a violation of section 1090. Consequently, pursuant to *Applied Equipment Corp.*, Klistoff and All City Services cannot be liable for conspiracy to violate section 1090.

■ Section 1090 derives from "a common law proscription against public officials having a financial interest in contracts created by them in their official capacities. [Citation.] In 1951, the Legislature codified the proscription when it enacted section 1090 to curb conflicts of interest with respect to contracts, purchases and sales made by public officials. [Citation.] Section 1090 is triggered when *a public official* has a direct financial interest in a contract." (*Carson Redevelopment Agency v. Padilla* (2006) 140 Cal.App.4th 1323, 1329–1330 [44 Cal.Rptr.3d 881], italics added.) Section 1090 attempts to prevent the conflict of interest between personal financial interest and official duties that arises when public officials have a personal economic interest in business they transact on behalf of the government. (140 Cal.App.4th at p. 1330.) "For these reasons, section 1090 is aimed at *any* interest, other than an interest that is too remote or speculative, that could compromise a public official's judgment or cast doubt on whether he executed his duties with the utmost allegiance, diligence, and loyalty to his office. . . . [S]ection 1090 stands as a prophylactic against the temptations that might corrupt or influence public officials." (*Ibid.*)

Thus section 1090 prohibits public officials—"[m]embers of the Legislature, state, county, district, judicial district, and city officers or employees" from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." The prohibition of section 1090 does not reach beyond these public officials.[2] Because they are not public officials subject to the prohibition of section 1090, Klistoff and All City Services cannot be found liable for conspiracy to violate that statute. They did not owe a duty to the City under section 1090, and because they were not persons within the scope of section 1090, defendants were not subject to liability for breach of that statutory duty under the rule in *Applied Equipment Corp.*

---

[2] Thus the prohibition of section 1090 is one of those "somewhat unusual" statutory duties in that its application is expressly restricted to the public officials enumerated in that statute. (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 48 [260 Cal.Rptr. 183, 775 P.2d 508].) In *Doctors' Co.*, for example, the duties imposed by Insurance Code section 790.03 were "expressly restricted to 'persons engaged in the business of insurance' ([Ins. Code,] § 790.01)." (*Doctors' Co.*, at p. 48.) Thus there could be no cause of action alleging a conspiracy between the insurer, attorneys the insurer hired to represent the insured, and the insurer's expert to deprive the insured of the benefits of Insurance Code section 790.03, subdivision (h)(5), because the attorneys and the expert acted solely as the insurer's agents and did not personally share the statutory duty alleged to have been violated. (49 Cal.3d at p. 49.)

#### d. *The Remedy in Section 1092 for Violating Section 1090 Does Not Apply to Klistoff and All City Services*

■ Section 1092 provides the remedy for violations of section 1090. It states: "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. No such contract may be avoided because of the interest of an officer therein unless such contract is made in the official capacity of such officer, or by a board or body of which he is a member."

Section 1092 reiterates that it and section 1090 apply to contracts made by public officials in their official capacity. "[A] contract in which a public officer is interested is *void*, not merely voidable." (*Thomson v. Call* (1985) 38 Cal.3d 633, 646, fn. 15 [214 Cal.Rptr. 139, 699 P.2d 316].) A contract void under sections 1090 and 1092 and against public policy provides " 'no ground for any equitable considerations, presumptions, or estoppels . . . and courts will not entertain any rights growing out of such a contract, or permit a recovery upon a quantum meruit or quantum valebat.' " (*Thomson*, at p. 647, italics omitted.) Thus "where a contract is made in violation of section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract without restoring any of the benefits it has received." (*Finnegan v. Schrader* (2001) 91 Cal.App.4th 572, 583 [110 Cal.Rptr.2d 552].) This remedy of disgorgement of benefits received under a void contract is automatic. (*Carson Redevelopment Agency v. Padilla, supra*, 140 Cal.App.4th at p. 1336.) Section 1092 thus extends to a private party who is paid money by a public entity pursuant to a contract that is void because it violates section 1090. Such a party must disgorge those public funds. (*Carson*, at p. 1337.) In *Carson Redevelopment Agency*, a city official extorted $75,000 from the Padillas, who owned a senior housing complex, in exchange for the city redevelopment agency's $850,000 low-interest loan to the Padillas. *Carson Redevelopment Agency* affirmed a judgment requiring the Padillas, who were parties to the contract and received public funds, to return the $850,000. (*Id.* at pp. 1327–1328.)

Klistoff and All Cities Services did not receive public funds pursuant to the September 18, 2001, franchise agreement. Instead, the City paid public funds to K&S as consideration for that contract. The City has not alleged that K&S was Klistoff's alter ego and that the corporate identity of K&S should be disregarded. The remedy provided by section 1092 does not extend to persons

or entities who were not parties to the contract with the City and to whom the City did not pay public money pursuant to a public contract.[3] For this additional reason, the second cause of action for conspiracy to violate section 1090 does not lie against Klistoff and All City Services, Inc.

### 3. *Conclusion*

We grant defendants' petition. We emphasize that our granting of the petition affects only the order overruling the demurrer to plaintiff's second cause of action for conspiracy to violate section 1090. We express no opinion on the validity of remaining causes of action in the complaint.

We add a comment about the scope of sections 1090 and 1092. These statutes prohibit public officials from having a financial interest in contracts created by them in their official capacities. The statutory prohibition protects the expenditure of public money by eliminating temptation, avoiding the appearance of impropriety, and assuring the public entity of the official's undivided and uncompromised allegiance. (*Carson Redevelopment Agency v. Padilla, supra,* 140 Cal.App.4th at pp. 1329–1330.) It is true that these provisions "cannot be given a narrow and technical interpretation that would limit their scope and defeat the legislative purpose." (*People v. Honig, supra,* 48 Cal.App.4th at p. 314.) Yet as this case illustrates, it is also true that sections 1090 and 1092 extend only to the persons they identify and the contracts they void, and not beyond. According to the allegations of the complaint, participants in this scheme took actions to corrupt the expenditure of public funds. Yet section 1090 does not apply to some of those participants, and section 1092 does not provide the City with a remedy for and does not otherwise penalize some of the actions they took. Thus, we believe that the limited scope of these statutes may have led to an unsatisfactory result. We therefore suggest that the Legislature revisit these statutes and consider amendments to ensure that they prohibit, and provide a penalty for, all wrongdoing associated with the corrupt expenditure of public funds in connection with contracts that are now the subject of section 1090.

---

[3] Compare the facts of *Thomson v. Call, supra,* 38 Cal.3d 633, in which a city council member sold real property to a third party who then conveyed it to the city. The California Supreme Court found that the public official in essence sold real property to the city. Although the transaction was complex, the third party's purchase of property from the city official was "in performance of a single multi-party agreement" (*id.* at p. 644) in which the public official used the third party as a conduit to convey real property to the city. The California Supreme Court allowed the city to retain the land sold by the public official and also to recover the purchase price, plus interest, from the public official. This remedy was justified because unlike the case at bench, the transaction in *Thomson* involved a city official who received funds pursuant to a city contract.

## DISPOSITION

The petition is granted. The matter is remanded to the trial court with directions to vacate the order overruling the demurrer to the second cause of action for conspiracy to violate section 1090, and to enter a new and different order sustaining the demurrer to that cause of action without leave to amend. Costs are awarded to petitioners.

Klein, P. J., and Croskey, J., concurred.

On December 14, 2007, the opinion was modified to read as printed above.