Filed 4/12/16  Certified for publication 5/4/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES D. MCGEE et al., | B262850 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC069859) |
| v. | |
| BALFOUR BEATTY CONSTRUCTION, LLC et al., | |
| Defendants and Respondents, | |
| KEVIN R. CARLIN, | |
| Objector and Appellant. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Carlin Law Group and Kevin R. Carlin for Plaintiffs and Appellants.

Leibold McClendon & Mann and John G. McClendon for Objector and Appellant.

Finch, Thornton & Baird, Jason R. Thornton and Louis J. Blum for Defendant and Respondent Balfour Beatty Construction.

Lozano Smith, Harold M. Freiman, Devon B. Lincoln and Travis E. Cochran for California Association of School Business Officials as Amicus Curiae on behalf of Defendant and Respondent Balfour Beatty Construction.

Law Office of Lawrence H. Kay and Lawrence H. Kay for Construction Employers Association as Amicus Curiae on behalf of Defendant and Respondent Balfour Beatty Construction.

Atkinson, Andelson, Loya, Ruud & Romo, Martin A. Hom and Jennifer D. Cantrell for Defendant and Respondent Torrance Unified School District.

Fagen, Friedman & Fulfrost, Paul G. Thompson, Cynthia Smith; California School Boards Association/Education Legal Alliance, Keith Bray and Joshua R. Daniels for California School Boards Association/Education Legal Alliance as Amicus Curiae on behalf of Defendant and Respondent Torrance Unified School District.

This is an appeal from the judgment of dismissal following the trial court's order sustaining defendants' demurrers without leave to amend. This case concerns the application of Education Code section 17406 (section 17406) which governs lease-leaseback construction agreements. Section 17406 provides an exception to the competitive bid process and, according to all parties and amici curiae, is widely used throughout the state.[1]

The gravamen of plaintiffs' lawsuit is that the lease-leaseback agreements entered into by defendants were a sham to avoid the competitive bid process and are therefore void. Following *Los Alamitos Unified School Dist. v. Howard Contracting, Inc.* (2014) 229 Cal.App.4th 1222 (*Los Alamitos*) and rejecting the more recent *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261 (*Davis*), we conclude that the school district complied with the requirements of section 17406. The plain language of section 17406 does not require use of the competitive bid process, and although the Legislature has amended the statute, it has not amended it to require competitive bidding in lease-leaseback agreements.

---

[1]     Amicus curiae California School Boards Association/Education Legal Alliance represents (without evidentiary support) that one school district has spent more than $2.7 billion using lease-leaseback contracts.

2

If the Legislature shares plaintiffs' view that the competitive bid process is superior, it may amend section 17406 to specify that it requires a school district to obtain competitive bids.

In addition to alleging the school district was required to obtain competitive bids, plaintiffs allege a conflict of interest in violation of Government Code section 1090 (section 1090). We reject defendants' arguments that plaintiffs' lack standing to raise the issue and that section 1090 always excludes all independent contractors. We conclude that, at this early stage in the proceedings, plaintiffs have alleged a cause of action for conflict of interest.

This appeal also involves a sanction award against plaintiffs' counsel. It is undisputed that the award must be reversed because this litigation is not frivolous.

We reverse the judgment of dismissal and direct the trial court to enter a new order overruling defendants' demurrers as to the conflict of interest cause of action only. The order sanctioning plaintiffs' counsel is reversed. In all other respects, the judgment is affirmed.

## FACTS AND PROCEDURE

This is the second appeal between plaintiff and appellant James McGee and defendants and respondents Balfour Beatty Construction, LLC (Balfour) and Torrance Unified School District (the District). Plaintiff and appellant California Taxpayers Action Network was not a party to the first appeal. Plaintiffs seek to recover money for the District; they seek no damages unto themselves.

In the first appeal, McGee challenged contracts for construction at Hickory Elementary School, Madrona Middle School, and North Hills High School, all within the District. (*McGee v. Torrance Unified School Dist.* (Jan. 23, 2015, B252570) [nonpub. opn.] (*McGee I*).) At each location, the contracts included a site lease, a sublease, and a construction agreement. The following causes of action in *McGee I* were identical to the causes of action alleged presently: (1) failure to comply with section 20110 of the Public Contract Code (which requires competitive bidding), (2) breach of fiduciary duty, (3) failure to comply with section 17417 of the Education Code (which requires competitive bidding),

3

(4) contractor conflict of interest, (5) improper use of section 17400 et seq. of the Education Code, (6) improper delegation of discretion and (7) declaratory relief.

In the prior case, the trial court sustained defendants' demurrers and dismissed the litigation. In a nonpublished opinion, we reversed the judgment of dismissal and directed the trial court to enter an order sustaining the demurrer to all causes of action except the one alleging a conflict of interest. (*McGee I, supra*, B252570.) In reaching this conclusion, we followed *Los Alamitos, supra*, 229 Cal.App.4th 1222.

Prior to *Los Alamitos* and *McGee I*, McGee filed the instant litigation challenging contracts related to construction of the Riviera Elementary School and the Towers Elementary School. The contracts were awarded to Balfour and were funded through a general obligation bond. Balfour was required to pay $1 per year for the lease of the site. The sublease provided that Balfour would lease the property to the District and the sublease payments would be determined by the cost of the construction not to exceed the guaranteed maximum price. Similar to the contracts at issue in *McGee I*, the contracts included a site lease, a sublease and a construction contract. Plaintiffs alleged that the leases were not "real leases" but were a subterfuge to avoid the competitive bidding process.

Plaintiffs' counsel modeled the complaint on a 2004 report from the executive officer at the State Allocation Board. After analyzing the lease-leaseback transactions entered into by school districts, the report concluded that there is "no legitimate lease" unless contractors financed the cost of construction. The report stated that the "interpretation and growing use of [Education Code] Section 17406 means that significant numbers of projects and significant sums of public funding are not being subjected to the checks and balances of the competitive bid process." "Staff believes that virtually none of the projects currently using lease lease-back arrangements actually have financing provided by the developer. If a 'lease agreement' other than the site lease exists at all, it serves no significant purpose other than as a construction contract. The full cost of the project is borne by the district using the normal funds it has available for capital projects. Normal progress payments are made to the contractor through the course of construction, and the project is completely paid for by the district at the project completion. The projects are in every regard typical public works

4

projects, except that they have not been competitively bid." The State Allocation Board did not accept the report. It decided to conduct additional research and make recommendations for changes to regulations at a future meeting.

In response to plaintiffs' complaint, Balfour moved for sanctions against plaintiffs' Attorney Kevin Carlin under Code of Civil Procedure section 128.7. That statute requires an attorney certify that "[t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(2).) Balfour argued the litigation was frivolous because Attorney Carlin's prior complaint reviewed in *McGee I* raised the same issues and was dismissed by the trial court. (At the time the sanction motion was filed, we had not decided *McGee I*.) Balfour argued that lease-leaseback agreements were commonly used throughout the state and had been approved in numerous validation actions. Ultimately, the trial court accepted this argument, and citing to the sister trial court judgment dismissing McGee's first lawsuit, issued sanctions against Carlin.

In addition to Balfour's sanction request, both Balfour and the District demurred to the complaint. The court sustained the demurrers. The court entered a judgment finding the lease-leaseback agreements legal, valid and enforceable. The court then entered a judgment of dismissal.

After judgment was entered in this case, the Fifth District decided *Davis, supra*, 237 Cal.App.4th 261, which adopted plaintiffs' theory that only "genuine" leases qualify under section 17406. Effective January 1, 2016, the Legislature amended section 17406, but did not amend or clarify the statute to limit the application of lease-leaseback agreements.

## DISCUSSION

We independently review the complaint to determine whether the alleged facts are sufficient to state a cause of action. (*Davis, supra*, 237 Cal.App.4th 261, 274.) "[T]he demurrer is treated as admitting all material facts properly pleaded, but does not admit the truth of contentions, deductions or conclusions of law." (*Id*. at pp. 274-275.) As we shall

explain, we conclude the trial court properly sustained the demurrer as to all causes of action except the conflict of interest cause of action.

We review the sanction order under the abuse of discretion standard. (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.) We conclude the trial court abused its discretion in awarding sanctions.

## *I. The Trial Court Properly Sustained the Demurrer to All Causes of Action Alleging the District Was Required to Obtain Competitive Bids*

Putting aside the cause of action for conflict of interest, plaintiffs' remaining causes of action are premised on the assumption that the lease-leaseback agreements were not "genuine," and the District was required to obtain competitive bids for the construction projects. In their first cause of action, plaintiffs alleged that Education Code sections 17400-17429 permit only genuine leases. Plaintiffs alleged that the leases in this case were "sham leases entered into as a subterfuge to avoid" the competitive bid process. The alleged breach of fiduciary duty cause of action is similarly premised on the failure to obtain competitive bids. The third cause of action for failure to comply with Education Code section 17417 also is based on the alleged failure to obtain competitive bids. Plaintiffs alleged the legal conclusion that section 17406 applies only to the site lease agreement, not the sublease agreement. Plaintiffs alleged improper use of section 17400 et seq. also alleged that section 17406 applies only to a genuine lease and applies only when the district does not have sufficient funds to finance the cost of construction. In their sixth cause of action for improper delegation of discretion, plaintiffs argue that the district failed to properly evaluate contractors. In the final cause of action for declaratory relief, plaintiffs allege that an actual controversy has arisen with respect to the application of the competitive bidding statutes in the Education Code and Public Contract Code.

## a. Competitive Bids Were Not Required Under Section 17406

Education Code section 17417 requires competitive bidding unless there is an exception. Section 17406 provides an exception.

Specifically, section 17406, subdivision (a)(1) provides: "*Notwithstanding* Section 17417, the governing board of a school district, *without advertising for bids*, may let, for a

minimum rental of one dollar ($1) a year, to a person, firm, or corporation real property that belongs to the school district if the instrument by which this property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term of the lease, and provides that title to that building shall vest in the school district at the expiration of that term. The instrument may provide for the means or methods by which that title shall vest in the school district before the expiration of that term, and shall contain other terms and conditions as the governing board of the school district may deem to be in the best interest of the school district." (Italics added.)

Los Alamitos and Davis disagree regarding whether section 17406 applies only to "genuine" leases defined by Davis as "something more than a document designated by the parties as a lease." (Davis, supra, 237 Cal.App.4th at p. 283.) Davis distinguished a genuine lease-leaseback contract from one designed to "avoid the competitive bidding process by subterfuge or sham." (Id. at p. 288.)

Davis relied on City of Los Angeles v. Offner (1942) 19 Cal.2d 483, 486 (Offner) in which the court held that a document labeled a lease was really a conditional sales contract and therefore created a present indebtedness. (Ibid.) Offner further explained that if the present indebtedness exceeded the constitutional limitation, the contract would be void even though it was labeled a lease. (Ibid.) The principal issue in Offner was whether the expenditures exceeded the yearly income in violation of the former constitutional provision prohibiting a city from incurring indebtedness exceeding the income and revenue for the year. (Ibid.; see City and County of San Francisco v. Boyle (1925) 195 Cal. 426, 438 [document although labeled lease in reality exceeded city's indebtedness in violation of former § 18 of art. XI of the state Const.].)

In contrast to Davis, in Los Alamitos the court held the following evidence was sufficient to uphold a lease-leaseback agreement: The school district "owns the land to be leased; . . . the contractor for the Project, agreed to construct the Project for a guaranteed maximum price; and title to the site and all improvements made by the Project will vest in the District at the end of the lease term." (Los Alamitos, supra, 229 Cal.App.4th at p. 1227.)

The plain language of the statute is consistent with the holding in *Los Alamitos*. The statute requires the real property belong to the school district, the lease is for the purposes of construction, and the title shall vest in the school district at the end of the lease term. (§ 17406, subd. (a)(1).) Plaintiffs' efforts to engraft additional requirements—such as the timing of the lease payments, the duration of the lease, and the financing—are not based on the plain language of the statute. Moreover, in contrast to *Offner*, this case does not involve a contract that potentially violated the constitutional provision on indebtedness and no party argues otherwise.[2] Even though there may be, as plaintiffs suggest, strong reasons to require competitive bidding in all circumstances, our role is to interpret the language of the statute, not to rewrite the statute. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59.)

We observe that the legislative history buttresses the conclusion reached in *Los Alamitos*. (See *Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at pp. 61 [even when no resort to extrinsic aids is necessary "we may observe that available legislative history buttresses our conclusion"].) The Legislature considered section 17406 during its 2003 and 2004 session when a proposed amendment would have added the following provision: "'(a) In order to enable school districts to let real property for the purpose of acquiring, financing, or constructing facilities, and notwithstanding Section 17417, the governing board of a school district, *through the competitive proposal process* set forth in Article 2.2 (commencing with Section 17429.1), may let, for a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property that belongs to the district if the instrument by which the property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term thereof, and provides that title to that building shall vest in the school district at the expiration of that term. The instrument may provide for the means or methods by which that title shall vest in the school district prior to the expiration of that term, and shall contain any other terms and conditions as the

---

[2]     Article XVI, section 18 of the California Constitution now restricts indebtedness including for school districts. Plaintiffs do not contend this provision was violated.

8

governing board may deem to be in the best interest of the school district. [¶] (b) Any rental of property that complies with subdivision (a) shall be deemed to have thereby required the payment of adequate consideration for purposes of Section 6 of Article XVI of the California Constitution.' (Legis. Counsel's Dig., Assem. Bill No. 1486 (2003–2004 Reg. Sess.).)" (*Los Alamitos, supra*, 229 Cal.App.4th at p. 1228, fn. 4, italics added.)

The proposed amendment did not survive the Governor's veto, at which time the Governor explained: "'I am supportive of using a competitive process for public works projects and understand that this bill is needed to clarify that process. However, this bill imposes restrictions on lease-leaseback contracts that could limit competition, inadvertently limit schools['] flexibility, and drive higher administrative costs; thereby potentially increasing the overall cost of school facility construction. [¶] For this reason, I cannot sign this measure.' (Governor's veto message to Assem. on Assem. Bill No. 1486 (2003–2004 Reg. Sess.) (Sept. 24, 2004).) The attempt to amend section 17406 to delete reference to the language 'without advertising for bids' implies that section 17406 as it reads now does not require competitive bidding." (*Los Alamitos, supra*, 229 Cal.App.4th at pp. 1228-1229.)

The Legislature again considered section 17406 in 2014. In an analysis of the bill that led to the amendment, the Senate Committee on Education referred to the same State Allocation Board report relied on by plaintiffs, stating: "In January 2004, the State Allocation Board was presented with a report to discuss the use of lease/lease-back agreements for project delivery of facilities funded through the School Facility Program. According to that report, the use of this project delivery method was growing. Increasingly, districts were interpreting existing law to allow the use of these provisions to award a public works project without a competitive bid. The report noted that some districts do institute a competitive selection process voluntarily, but many do not, and expressed concern that an interpretation that would potentially allow billions of state bond dollars to be contracted through a 'sole-source' mechanism should be closely examined." (Sen. Com. on Education, Analysis of Assem. Bill No. 1581 (2013-2014 Reg. Sess.) June 18, 2014, p. 4.) The analysis further described the conclusions of the report, noting that the State Allocation Board did not accept the report. (*Id*. At p. 5.) The committee's analysis noted that the

9

current bill "does not propose changes or clarifications to the broader issues and concerns surrounding the lease/leaseback agreements and competitive bidding. However, it does provide clarification that when these types of projects go before the State Allocation Board to secure state general obligation bonds to fund these agreements, these projects are subject to the pre-qualification requirements statutorily required for competitively bid projects." (*Ibid.*)

The Legislature could modify section 17406 to require competitive bidding in all circumstances or to clarify that it applies only when a contractor funds the project and when the school district is not permitted to accelerate payments, conditions alleged by plaintiffs to support their claim that the leases in this case were not "genuine." Because these requirements are not currently included in the statute, we reject plaintiffs' argument that the District was required to obtain competitive bids.

Plaintiffs' remaining arguments, which were rejected by both *Los Alamitos* and *Davis*, are not persuasive. The District was not required to comply with Education Code section 17417, because section 17406 expressly exempts the requirements of section 17417 when it states "[n]otwithstanding [s]ection 17417." Section 17406 applies to both a site lease and a sublease. "[T]he phrase '[n]otwithstanding Section 17417' means the bidding procedures set forth in section 17417 do not apply to agreements covered by section 17406(a)(1). The phrase 'without advertising for bids' provides a further indication that competitive bidding is not required for agreements falling within section 17406(a)(1)."[3] (*Davis, supra*, 237 Cal.App.4th at p. 282; see 56 Ops.Cal.Atty.Gen. 571, 579-581 (1973) [concluding that the Legislature did not impose competitive bidding requirements on construction authorized by the predecessor to § 17406].) Because plaintiffs have not shown the District was required to entertain competitive bids, the trial court properly sustained defendants' demurrers to all of the causes of action except the conflict of interest cause of

---

[3] Because we conclude plaintiffs' causes of action based on the failure to obtain competitive bids cannot go forward, we need not consider the trial court's conclusion that the Government Claims Act (Gov. Code, § 810 et seq.) also bars plaintiffs' cause of action for breach of fiduciary duty.

action.  On appeal, plaintiffs do not show that they could amend the complaint to assert a cause of action based on the District's failure to obtain competitive bids.

## 2. *The Trial Court Should Have Overruled the Demurrer to the Conflict of Interest Cause of Action*

Because plaintiffs alleged a cause of action for violation of section 1090, the trial court should have overruled defendants' demurrers as to that cause of action.

### a.  Background

In their conflict of interest cause of action, plaintiffs alleged that Balfour had a conflict of interest based on its professional program management, construction management, and preconstruction services to the District.  Plaintiffs alleged Balfour provided preconstruction services including budgeting, development of plans and specifications and that these services "filled the roles and positions of officers, employees and agents" of the District.

A 2008 agreement attached to the complaint indicated that Balfour would provide construction management services to the District.  The services included cooperating with architects, business administration, monitoring project construction including providing a schedule for each set of bidding documents, making sure all laws are followed, assisting the District in receiving bids, record the progress of the project, maintaining the project site, reviewing invoices for work, assisting in determining the lowest responsible bidder, inspecting the construction, and assisting in determining when construction was complete.

### b.  Analysis

Section 1090 "'codifies the long-standing common law rule that barred public officials from being personally financially interested in the contracts they formed in their official capacities.' [Citation.]  Government Code 'section 1090 is concerned with ferreting out any financial conflicts of interest, other than remote or minimal ones, that might impair public officials from discharging their fiduciary duties with undivided loyalty and allegiance to the public entities they are obligated to serve.  [Citation.]  Where a prohibited interest is found, the affected contract is void from its inception [citation] and the official who engaged in its making is subject to a host of civil and (if the violation was willful) criminal penalties,

11

including imprisonment and disqualification from holding public office in perpetuity [citations].'" (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 818.) "'[A] contract in which a public officer is interested is *void*, not merely voidable.'" (*Klistoff v. Superior Court* (2007) 157 Cal.App.4th 469, 481.)

Section 1090 provides in pertinent part: "(a) Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

*i. Standing*

The threshold issue is whether plaintiffs have standing to allege a section 1090 violation. Relying on our high court's decision in *Thomson v. Call* (1985) 38 Cal.3d 633, the *Davis* court held that the taxpayer had standing to challenge the school district's contracts based on a conflict of interest under section 1090. *Davis* held that allegations essentially the same as the present ones were sufficient to state a cause of action for conflict of interest. (*Davis, supra*, 237 Cal.App.4th at p. 294.) "[C]orporate consultants should not be categorically excluded from the reach of Government Code section 1090. Such a statutory interpretation would allow the use of the corporate veil to insulate conflicts of interest that otherwise would violate the prohibition against local government officers and employees from making contracts in which they are financially interested. . . . Because the statute's object is to limit the *possibility* of any influence, direct or indirect, that might bear on an official's decision [citation], we conclude the allegations that Contractor served as a professional consultant . . . and had a hand in designing and developing the plans and specifications for the project are sufficient to state" a cause of action. (*Id.* at p. 301; see *Hub City Solid Waste Services, Inc v. City of Compton* (2010) 186 Cal.App.4th 1114, 1119-1120 (*Hub City*) [independent contractor who advised city staff could be held liable under § 1090].)

12

In contrast to *Davis*, in *San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679 (*San Bernardino*), the court held that a taxpayer did not have standing to allege a cause of action under section 1090 for a conflict of interest because there were "no allegations of fact in the complaint showing that any present county official was involved in the alleged bribery scheme or is otherwise engaged in fraud or collusion." (*San Bernardino*, at p. 688.) Additionally, the taxpayer could not invalidate an agreement because it had already been approved in a validation action. *San Bernardino* did not rely on our high court's opinion in *Thompson v. Call*, because the opinion did not explicitly discuss standing. (*San Bernardino, supra*, at p. 685.)

*Davis* is closer to this case than *San Bernardino*. As in *Davis*, this case involved a validation action in which the court had authority to set aside void contracts. A contract in violation of section 1090 is void. (*Klistoff v. Superior Court, supra*, 157 Cal.App.4th at p. 481.) In contrast, in *San Bernardino*, plaintiffs' challenge to the agreement was barred by a prior validation judgment. (*San Bernardino, supra*, 239 Cal.App.4th at p. 688.) Additionally, in contrast to *San Bernardino*, this case did not involve a decision by former school board members, but was brought shortly after the District approved the contracts. (*See id*. at pp. 682-683.) Further, in contrast to the *San Bernardino* court, we find *Thompson v. Call, supra*, 38 Cal.3d 633 apposite as our high court could not have concluded a contract was invalid in violation of section 1090 without implicitly concluding that the taxpayers challenging it had standing to challenge it.[4] (Cf. *Los Altos Property Owners Assn. v. Hutcheon* (1977) 69 Cal.App.3d 22, 30 [considering Supreme Court's implicit holding on taxpayer standing].)

*ii. At This Early Stage in the Proceedings, Section 1090 May Apply*

While section 1090 refers to "city officers or employees," in the civil context, it has been interpreted broadly to include independent contractors. (§ 1090, subd. (a).) For

---

[4]     Balfour argues that *San Bernardino* stands for the proposition that plaintiffs' lack standing as to the first through fifth causes of action. *San Bernardino*, however, considers only a cause of action for conflict of interest. (*San Bernardino, supra*, 239 Cal.App.4th at pp. 684-688.)

example, in *Hub City, supra*, 186 Cal.App.4th 1114, Division Four of this court held that an independent contractor who advised city staff regarding waste management could be held liable under section 1090. The independent contractor had significant influence in that he "identified vendors, and negotiated to acquire trucks, refuse containers, and real estate on behalf of the city. He negotiated a transfer station disposal contract and a contract for a maintenance facility." (*Hub City*, at p. 1220.) He also had "discretion over which vendors to solicit, and influenced the city's staffing decisions." (*Ibid.*) He held the city "with the acquisition of insurance, and discussed the possibility of outsourcing waste hauling operations to a private contractor." (*Ibid.*) The independent contractor "acted as the director of the in-house waste division, working alongside city employees, overseeing day-to-day operations . . . , and taking responsibility for public education and compliance with state-mandated recycling and waste reduction efforts." (*Ibid.*; but see *People v. Christiansen* (2013) 216 Cal.App.4th 1181, 1189 [in criminal context independent contractor cannot be employee of city].)[5]

As the *Davis* court explained, interpreting section 1090 to exclude corporate consultants "would allow the use of the corporate veil to insulate conflicts of interest that otherwise would violate the prohibition against local government officers and employees from making contracts in which they are financially interested. A corporate consultant is as capable of influencing an official decision as an individual consultant." (*Davis, supra*, 237 Cal.App.4th at p. 301.)

Here, plaintiffs allege that Balfour "filled the roles and positions of officers, employees and agents of [the District.]." At this early stage in the proceedings, the allegation must be credited. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) As in *Hub City*, "[a] person in an advisory position to a city may fall within the scope of

---

[5]     We recognize that in the criminal context *People v. Christiansen, supra*, 216 Cal.App.4th 1181 reached a different conclusion. It held that, in the criminal context, the term "employee" could not apply to an independent contractor. (*Id.* at p. 1189.) We follow *Hub City* because this case, like *Hub City*, is a civil case.

14

section 1090." (*Hub City, supra*, 186 Cal.App.4th at p. 1124.) The trial court therefore should have overruled the demurrer to McGee's fourth cause of action.

Finally, respondents' and amici curiae's reliance on Public Contract Code section 10365.5 (which was added in 1990) to argue that Government Code section 1090 does not apply is misplaced. Public Contract Code section 10365.5 provides with certain exceptions not relevant here: "(a) No person, firm, or subsidiary thereof who has been awarded a consulting services contract may submit a bid for, nor be awarded a contract for, the provision of services, procurement of goods or supplies, or any other related action which is required, suggested, or otherwise deemed appropriate in the end product of the consulting services contract." If anything, Public Contract Code section 10365.5 suggests that the Legislature recognized the potential conflict inherent in the same entity serving as a consultant that plans a construction project and the contractor who carries out the project. The fact that Public Contract Code section 10365.5 applies specifically to consultants does not show that Government Code section 1090 cannot also apply to consultants as the two statutes are not mutually exclusive. In a proper case, arguably both could apply, but here the District is not governed by Public Contract Code section 10365.5.[6]

---

[6] At respondents' request, we have taken judicial notice of the legislative history of Assembly Bill No. 1059 (2013-204 Reg. Sess.), which was never codified. The proposed amendment to extend section 1090 to independent contractors failed for reasons not explained in the history provided to us. The legislative history provided to us does not suggest the Legislature intended to modify the statute to overrule the analysis in *Hub City*, which was decided prior to the proposed amendment and which was followed after this proposed amendment in *Davis*.

On our own motion we take judicial notice of the record on appeal in *McGee I, supra*, B252570. This renders moot plaintiffs' request for judicial notice of the docket in that case. We deny plaintiffs' request for judicial notice of complaints in other cases because they are not helpful to the resolution of the issues on appeal. We decline plaintiffs' request for judicial notice of a letter from the General Counsel of the Fair Political Practices Commission providing advice to the City of San Diego on a potential conflict of interest from hiring the same contractor for the design and construction phases of a project. (Gov. Code, § 1097.1, subd. (c)(5).)

15

### *3. The Sanctions Against Plaintiffs' Attorney Must Be Reversed*

Following Balfour's motion, the trial court found the litigation frivolous and ordered Attorney Carlin pay Balfour sanctions. As Balfour concedes, in light of *Davis*, the litigation cannot be characterized as frivolous, and the sanction order must be reversed.

## DISPOSITION

The judgment of dismissal and order awarding sanctions are reversed. The trial court is directed to enter a new order sustaining defendants' demurrer without leave to amend as to all causes of action except the cause of action alleging Balfour had a conflict of interest. The parties shall bear their own costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES D. McGEE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BALFOUR BEATTY CONSTRUCTION, LLC et al., <br><br> Defendants and Respondents, <br><br> KEVIN R. CARLIN, <br><br> Objector and Appellant. | B262850 <br><br> (Los Angeles County <br> Super. Ct. No. YC069859) <br><br> ORDER CERTIFYING OPINION <br> FOR PUBLICATION <br><br> NO CHANGE IN JUDGMENT |

THE COURT:*

      The opinion in the above-entitled matter filed on April 12, 2016, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

\*      BIGELOW, P. J.           FLIER, J.               GRIMES, J.